JAMES T. DERRICKSON et al. *vs.* CHARLES P. EDWARDS et al.

1. Where a building contract is entire, the work is not considered done, nor the materials furnished, until the contract is executed; and a lien can be filed at any time within one year from the time the work is finished.

2. Where property is conveyed between the time of making the contract or doing the work and the time of filing the lien, the person holding the title when the lien is filed is the proper one to be made a party as owner.

3. A flume constructed of wood, and used to lead the water from the pond or raceway to the wheel inside the mill, is a fixture within the meaning of the mechanics' lien law for which a lien may be enforced.

4. If a lien claim describe more land than is properly included in the lot or curtilage on which the building is erected, the lien for that reason is not invalid, but will be good upon what properly belongs to the lot and curtilage, and is necessary to the enjoyment of the premises.

5. The court will not decide on a writ of error whether the lien claim includes too much land: that is a question of fact, to be settled at the trial.

In error to the Morris Circuit Court.

*Cutler* and *Randolph*, for plaintiffs in error.

*Williamson* and *Dayton*, for defendants.

OGDEN, J.   The proceedings were instituted by Edwards and Clark, in Morris county, to enforce a lien claim upon a paper mill and the curtilage whereon it is erected.

The materials were furnished and the work was done

by the plaintiffs below, under a special contract, made with Derrickson, as builder, who at the time was also the owner of the premises.

Some months after the work was completed, and was partly paid for, but before the lien claim was filed in the clerk's office, Derrickson sold and conveyed the property to Seymour and Sage, who went into possession and held it when the lien was filed and when the suit was commenced. The repairs and additions made by the plaintiffs to the mill were finished by the 25th of February, 1857, and the claim was filed on the 31st of the following December. The summons was issued on the 14th of January, 1858.

In the paper filed with the clerk, the plaintiffs below claim a lien upon the building known as the Phœnix mill, together with the lot and curtilage whereon the same stands, which lot is particularly described by courses and distances and a deduction of title; and they state that the land and estate therein in fee simple is owned by Melancthon L. Seymour and Warren B. Sage. They further state that the name of the person who contracted the debt, and for whom the materials were furnished, and the work, labor, and services rendered, for which the lien is claimed, is James T. Derrickson.

The bill of particulars attached, which is dated February 25th, 1857, is for building water-wheel, flume, and breast shaft, and furnishing materials, done by special contract for $4000. Credits are given upon it, which reduce the balance claimed to $1814.70.

After the plaintiffs rested their case before the jury, the counsel for the defendants moved the court to *dismiss* the suit as against all the defendants, and especially as against Seymour and Sage.

1st. Because Seymour and Sage were improperly joined in the action.

2d. Because it appeared that a part of the labor and

materials were done and furnished more than a year before the finding of the lien claim.

· 3d. Because the lien claim is bad, and void on its face, in not stating with sufficient particularity the times and terms of doing the work and furnishing the materials.

4th. Because it claims a lien on more land than is subject to any rightful lien of the plaintiff.

5th. Because the claim is void in claiming a lien for work and materials on the flume.

This motion was overruled.

The defendants examined several witnesses, and at the close of the testimony it was agreed by the parties that the verdict should be taken for the plaintiff for the amount claimed, with interest from the 25th of February, 1857 ; and that all questions of law raised during the trial should be reserved for the opinion of the Supreme Court at bar, and that the verdict should be subject to the opinion of that court on the points reserved.

The matters were argued at the Supreme Court. upon the. case stated for their opinion, and they certified to the Circuit Court that they found no error in the proceedings or verdict upon the questions reserved for their advisory opinion, and that the several questions so reserved should be decided in favor of the plaintiffs.

Final judgment was rendered in the Circuit Court in favór of the plaintiffs, which has been removed into this court by writ of error.

It appears in the case that the work was commenced about the 6th of October, 1856, and as the claim was not filed until the 31st of December, 1857, the defendants have insisted that the price of the materials furnished and work done more than a year before the claim was filed, did not become a lien on the premises.

Two satisfactory answers are given to this objection.

First, that the contract is an entirety, and that, in the contemplation of the statute, the work and materials cannot be considered as furnished until the whole contract

was completed. Neither the language of the act, nor any intention which can be collected from it, requires a mechanic working under a contract to file lien claims from week to week, as his work progresses.

The other answer is, that the two credits, amounting to $2300, which are given on the lien claim filed under date of October 31st, 1856, without specific appropriation by the payor, are more than sufficient to pay for all the work and materials which were shown to have been furnished before the 31st of December, 1856.

The next ground of error relied on is, that the lien claim was improperly filed against Seymour and Sage as owners, because they did not purchase the property until several months after the work was completed.

The 6th section of the statute requires that the lien claim filed should contain, among other things, " the name of the owner or owners of the land, or of the estate therein, on which the lien is claimed," and also the name of the person who contracted the debt, who shall be deemed the builder.

The claim, in this case, names Mr. Derrickson as the person who contracted the debt, and Messrs. Seymour and Sage as the owners in fee of the land on which the lien is claimed.

The lien claim was correctly made out, unless the act required that the person who was owner when the work was done should be styled owner at the time of filing the claim, instead of the person or persons who became purchasers intermediate between the commencement of the work and the filing of the claim.

It would seem to be consistent with principle, that the party holding the title at the time the lien is attempted to be enforced, should have notice of the encumbrance by being made a party to the legal proceeding. The form of the summons is given in the 8th section of the statute, which makes the builder and owner, and *no* other persons, parties defendant to the suit; therefore Seymour

and Sage are improperly named in the claim as owners ; they were improperly notified, by the process issued and served on them, to defend and protect their property from the encumbrance put on it before their purchase.

Such construction should not be put upon the 6th section, unless the other parts of the act show clearly that the legislature so intended. If the objection has been well taken, the lien claim is destroyed, because the mechanic cannot hereafter correct the mistake by filing a new claim. The settlement of it is therefore of the first importance to the defendants in error.

By a proviso to the 12th section, the lien may be extended for a second year, by a written agreement for the purpose, signed by the land-owner and claimant, and annexed to the claim on file, before the first year has expired. Could the legislature mean to give a person having no interest in the land a right to encumber it for a year without the assent of his vendee ? Again, the claimant is required, upon receiving written notice to that effect from the owner of the land or buildings, to commence a suit on the claim within thirty days, or lose his claim. Did the legislature intend that the debtor who neglects to pay his debt to the mechanic, should have the privilege of hastening legal proceedings against property after he had sold it, perhaps, to the great prejudice of his vendee's rights ?

Suppose that the builder, after selling his estate to a *bona fide* purchaser, should refuse to expedite the proceedings by giving the notice thus provided for, is the cloud upon his title to be continued for a year, when he is desirous of having a speedy adjudication upon the amount claimed, and upon the question whether the property is liable for the debt ?

The 15th section provides that any land-owner desiring to contest a claim, and to free his house and land from the lien thereof, may pay the amount to the county clerk ; which money is to be held by him until the claim is es-

Derrickson v. Edwards.

tablished by suit. Does this refer exclusively to the owner at the time the work was done, or to a subsequent owner also?

I think there is no doubt but that the lien claim was properly made out in this case, and that Seymour and Sage are proper and necessary parties to the trial.

It was also assigned for error, that the court below decided that the cost of the flume was properly included in the amount for which the lien claim was filed. If the claim is good for this item of the account, it must be on the ground that it is a fixture necessary for carrying on the manufacturing purposes for which the mill was repaired and is designed. It will not be necessary, for the settlement of the point before us, that the court shall say that *every structure* which may properly be called a flume will be within the intent of the lien law. The meaning of the word is, "the passage or channel for the water that drives a mill wheel."

All that the court need say at present is, whether the structure which was made by the plaintiffs below, and called a flume in their lien claim, shall be "considered a building" within the 5th section of the mechanics' lien law. It appears, in the case, that the flume claimed for was built of wood, six feet wide, four feet high, and from sixty to one hundred feet long, running, either from the pond or a race-way, into the mill for several feet, and is used for the purpose of conveying the water upon the wheel, which, also, is within the mill building. The work is as necessary and as fixed a contrivance for making paper at that establishment, as the water-wheel and breast shaft and grinding engines are.

The plaintiffs purposely extended their lien claim to that part of their work done under the contract, and there was no error on that point in the ruling of the court below or in the advisory opinion.

In the 5th assignment of errors it is said that the lien claim should have been held to be void, because it em-

braces more land as a curtilage than was subject to any rightful lien of the plaintiffs. The court refused to *dismiss* the writ on that ground, and we are to settle whether such refusal was error.

Assuming that the claim in this case is *entirely too* broad, (a fact which we cannot pass upon on a writ of error) and that the dwelling-houses, with the separate lots fenced in with them, should not have been covered by the claim, and that, perhaps, not half of the land which is embraced should be claimed as the curtilage, is the claim for that cause totally invalid and void ?

A curtilage is a piece of ground within the common enclosure belonging to a dwelling-house, and enjoyed with it, for its more convenient occupation. But it does not hence follow, if the land-owner on whose estate there is a lien claim has only an outside fence around a farm of one hundred acres, that the whole ground enclosed is, *ex vi termini,* a curtilage within the intent of the statute.

Undoubtedly the lot or curtilage, claimed to be bound in this case by the lien, should have been limited to so much land as is necessary for the convenient and beneficial enjoyment of the mill on which the work was done.

Seeing that the idea of a curtilage may be expanded or contracted by the character and location of the erection standing upon it, and by the nature and extent of the business to be done there, it is highly probable that mechanics and materialmen may honestly differ about the amount of land which can fairly be held by the lien.

It may become a question of fact, to be settled in some manner at the trial; and although the lien cannot lawfully be extended beyond the lands described in the lien claim, yet it does not follow that the claimant must necessarily enforce his lien on all the property he describes as a curtilage, or else lose the entire lien claim.

There is nothing in the act which requires the court to say that an error in judgment on the part of the claimant, as to the extent of the curtilage which he lawfully

can hold, shall destroy his lien upon the building, and on so much land as may be a proper curtilage in the particular case.

I do not find any error in the proceedings in the Morris Circuit Court, or in the advisory opinion which was certified to them by the Supreme Court.

The judgment below should be affirmed.

*For affirmance*—Judges OGDEN, HAINES, CLAWSON, COMBS, CORNELISON, KENNEDY, SWAIN, and WOOD.

*For reversal*—Judge BROWN.

CITED *in Robins* v. *Bunn*, 5 *Vr*. 323; *James* v. *Van Horn*, 10 *Vr*. 364; *Jacobus* v. *Mut. Ben. Life Ins. Co.*, 12 *C. E. Gr*. 627.