Inhabitants of Phillipsburgh *v.* Bruch's Executor.

---

THE INHABITANTS OF THE TOWN OF PHILLIPSBURGH

*v.*

THE EXECUTOR OF WILSON J. H. BRUCH, deceased, et al.

1. As a general rule, a will speaks only from the death of the testator, but where a contrary intention is manifest on the face of the will, the will will be read as of the time when the testator intended it should speak.

2. Under a devise " of the house and lot in which I now reside," the devisee will take only the lot which the testator, prior to the date of his will, had separated from his adjacent lands and enclosed by fences.

---

On final hearing on bill and answers, and cross-bill and proofs taken in open court.

*Mr. S. C. Smith* and *Mr. S. M. Dickinson,* for complainants.

*Mr. James M. Robeson* and *Mr. Barker Gummere,* for the executor of Wilson J. H. Bruch, deceased.

*Mr. B. C. Frost,* for Elizabeth Sterner.

Van Fleet, V. C.

The object of this suit is to procure an adjudication as to the extent or quantity of land the complainants are entitled to under the will of George Bruch, Jr., deceased. The will in question bears date August 28th, 1868, and was admitted to probate September 18th, 1868, the testator having died in the interval. The testator first gives his widow an estate, during widowhood, in all his estate, both real and personal, and he then says that—

"On the death or marriage of my widow, I give, devise and bequeath all my estate, both real and personal, of every kind and description whatsoever, and wheresoever situate, to my beloved son, Wilson J. H. Bruch, to him, his heirs and assigns forever; except the house and lot, in the town of Phillipsburgh, in which I now reside. That house and lot I give and devise to my said son during his natural life, for him to live in, occupy, possess and enjoy at his pleasure, and not to be subject to be sold or in any way disposed of for his debts or liabilities; and in case my said son shall die without leaving lawful issue him surviving, by him begotten, then I give and devise the said house and lot to 'The inhabitants of the town of Phillipsburgh, in the county of Warren,' in trust, nevertheless, that they will keep the said house and lot in good repair, and will keep it for a public school-room, and for no other uses or purposes whatsoever; and if they should divert it to any other use, that then and in such case the said house and lot to revert to my estate and go to my heirs-at-law. It is my will that the mayor and common council of the said corporation of 'The inhabitants of the town of Phillipsburgh,' and that they and their successors in office, shall faithfully carry out the trust aforesaid."

The testator's widow died in December, 1878, and his son Wilson in June, 1880. The son died without leaving issue, never having been married, so that the contingency on which the complainants were to take has happened. But a difference of opinion exists as to what they are entitled to take under the words, "the

house and lot in the town of Phillipsburgh in which I now reside," and they have brought this suit to have that question decided.

The testator acquired title, in 1846, to a farm of one hundred and forty-eight acres of land, lying mainly on the north side of South Main street, in the town of Phillipsburgh. A small part, however, lay on the opposite side of the street. At the date of his will the testator resided on the south side of this street, and still held title to about three and a quarter acres lying on that side of the street. The improvements, at that time, on the three and a quarter acres, were a large brick mansion-house, occupied by the testator as his residence; next adjacent, on the east, was a frame dwelling-house, occupied by a tenant; the garden used in connection with this house then intervened, and next to that came a storehouse, which was also occupied by a tenant. In the rear of the lots just mentioned there was an open space, extending to the Morris canal, varying in depth from thirty to eighty feet. Immediately west of the brick dwelling-house occupied by the testator, there was a vacant lot, having a front on South Main street of about ninety-three feet and extending back to the canal, giving it a depth of about two hundred feet. All these lands, at the date of the will, were in the possession of the testator, except the lot and garden belonging to the frame dwelling-house and the storehouse lot. The lot on which the testator's brick dwelling stood was separated from his surrounding lands by fences, enclosing grounds for a front and rear yard. The garden he used was also enclosed by a fence, and lay adjacent to his dwelling-house lot on the east, and just in the rear of the frame dwelling-house. The complainants insist that by the true construction of the devise under consideration, they are entitled to all the lands on the south side of South Main street which were in the possession of the testator at the date of his will, whether they were used by him for the purposes of his residence or not; while the devisee of the testator's son Wilson contends that the complainants take nothing but the lot surrounding his mansion as enclosed, including the garden.

As a general rule, a will speaks only from the death of the testator, but where a contrary intention is manifest on the face of the will, as where the testator says that it shall take effect as of a particular date, as, for example, where the testator says he gives the house or lands now occupied by him, or all the estate of which he is now seized or possessed there, in order to give effect to his plain intention his will must be read as though he had inserted the actual date and had said, I give the house or lands now occupied by me on this 28th day of August, 1868. This rule prevails in England, where they have a statute which, in express words, declares that every will shall be construed to speak and to take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. *Cole* v. *Scott, 16 Sim. 259; S. C. on appeal, 1 Macn. & G. 518; Hutchinson* v. *Barrow, 6 H. & N. 583.* According to the settled rule, then, the complainants are entitled, under this devise, to the house and lot in which the testator resided at the date of his will.

Now, what passed under this devise? The important words are, " the house and lot in the town of Phillipsburgh, in which I now reside." They describe the thing the testator intended to give. A devise of a " house," without further descriptive words, has been held to be synonymous with messuage, and to pass all within the curtilage of the house. *Bennet* v. *Bittle, 4 Rawle 339; Rogers* v. *Smith, 4 Pa. St. 93.* And in *Lanning* v. *Sisters of St. Francis, 8 Stew. Eq. 392,* the chancellor held that, under a devise " of my house, No. 160 Rose street," all of the testator's land adjacent to the house, passed, that had been used in connection with the house either for the purposes of a residence or business. In repeated instances, it has been decided, where the thing devised was described as " my house and land now occupied by me," or " the farm now occupied by me," or " the farm whereon I now live," that all the lands coming within the description, in the testator's actual use and possession, would pass, but not those which were held under him by tenants. As to them, it was said they could in no sense be considered to have been in the occupation of the testator. *Jackson* v. *Sill, 11 Johns. 202; Brown* v.

*Saltonstall, 3 Metc. 423; Jackson* v. *Moyer, 13 Johns. 531; Allen* v. *Richards, 5 Pick. 512; Perkins* v. *Jewett, 11 Allen 9.*

But in the will under consideration the testator does not give all the land occupied by him, nor the house and *land* occupied by him, but merely the house and *lot* in which he resides. The difference between the two forms of description is very wide; the first embraces all the land which is in the testator's actual occupancy in connection with his house, while the second simply embraces that which he uses for the purposes of a residence. " The term 'occupy,' in legal acceptation," says Chief-Justice Thompson, in *Jackson* v. *Sill,* " implies actual use, possession and cultivation," but the words " the house and lot in which I reside " are manifestly much more limited in their scope, and read in their ordinary and natural sense cannot be construed to comprehend anything more than the testator used as a homestead. Besides, in searching for the meaning which the testator meant these words should have, it is of the first importance to note that he not only used the word " lot " in designating the quantity or extent, a term more generally used to describe a small parcel of land than a large parcel, but that the boundaries of the lot on which he resided were clearly defined and marked by fences, separating his homestead lot from his surrounding lands. We have, then, this state of facts: At the time this will must be construed as speaking, the boundaries of the lot on which the testator resided were well defined, and the lot itself cut off and separated from his adjacent lands; the lot thus bounded corresponds, in every particular, with the description given of the thing devised in the devise itself, and if the lot so enclosed be held to be the thing devised, it will exhaust the devise. These tests must be regarded as decisive. Where these conditions exist, the devisee is entitled to nothing beyond what will fairly answer the requirements of the devise, especially against the testator's heir-at-law, who can never be deprived of right to succeed to his ancestor's lands except by plain words.

In my judgment, the complainants are entitled to the lot as it stood enclosed (including the garden) at the date of the testator's will, but to nothing more.

The testator's sister, Elizabeth Sterner, has been made a defendant. She, it is said, is his only heir-at-law. The will, it will be remembered, provides that in case the land devised to the complainants is used for any other purpose than a public school-room, the house and lot shall, to quote the words of the will, "revert to my estate, and go to my heirs-at-law." After the death of the testator, part of the lands lying on the south side of South Main street was taken, by condemnation, by the Easton and Amboy Railroad Company, and the money awarded paid into this court. The complainants, by their bill, claim that the land so taken constituted part of the lands devised to them, and consequently that they are entitled to the money. Mrs. Sterner agrees with the complainants that the land taken by condemnation constituted part of the lands devised to them, but she insists that the conversion of the land into money, by the exercise of the right of eminent domain, effected the diversion mentioned in the will, and on the occurrence of which the lands devised were to go to the testator's heirs-at-law; she therefore claims that she is entitled to the condemnation-money, and has, accordingly, filed a cross-bill for the purpose of getting the affirmative relief to which she claims she is entitled. I think she is wrong in both claims. And it is proper, I should confess I have never been able to understand either the logic or the law on which her last contention is based. Her cross-bill must be dismissed, with costs.