122 N.J. Super. 18 (1972)
298 A.2d 308
JACK KRUL, t/a UNITED ROOFING & SHEET METAL CO., PLAINTIFF,
v.
BOARD OF ADJUSTMENT OF THE CITY OF BAYONNE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 19, 1972.
*20 Mr. Fred R. Gruen for plaintiff (Messrs. Gruen and Goldstein, attorneys).
Mr. Cresenzi W. Castaldo for defendant.
LARNER, A.J.S.C.
Since 1957 plaintiff Jack Krul has been conducting a business at 94-96 East 22nd Street, Bayonne, New Jersey, for the storage, sale and distribution of sheet metal and roofing materials and supplies under the trade name of United Roofing and Sheet Metal Co. He held equitable title under a purchase contract for several years until 1961, when legal title was conveyed to him by deed from the former owner. The plot of land covered an area of 125' x 125' on the southeast corner of Avenue F and 22nd Street. The deed described the property by metes and bounds with an additional reference to the designation on the tax map of the city as Lots 8, 8 1/2, 9, 9 1/2, 10 and 10 1/2 in Block 305. The tax map reflects the plot of land as divided into six separate lots, each having the dimensions of 25' x 100'.
The property was in a light industrial zone, permitting plaintiff's use throughout his ownership until 1969 when the city adopted a new comprehensive zoning ordinance which changed the permitted use to multi-family residential. *21 Thereafter, plaintiff's use and structures continued without interruption as a protected nonconforming use pursuant to N.J.S.A. 40:55-48 and the local ordinance provision, Art. 7, § 701.
On or about February 18, 1972 a fire destroyed one of the buildings which was known as Hooper Cooper Hall. It is undisputed that for all practical purposes this building was totally destroyed, as a result of which the remainder had to be razed, leaving only the foundation. The demolished building was an old three-story frame structure which had been constructed on a portion of the premises measuring 50' x 100' and located at the very corner of Avenue D and East 22nd Street on Lots 8 1/2 and 9 as designated on the tax map.
For some years prior to the change in zone Hooper Cooper Hall was the main building of a complex of buildings and was used for purposes connected with plaintiff's business. The first and second floors were used for the storage of many of the metal items and other supplies which required heat and shelter for protection. The third floor was divided into two apartments which were rented out as dwelling units. In addition there was one office on the first floor and another small private office on the second floor. The basement was also used for warehousing of materials.
In addition to this main building which served as the hub of the business use, as the enterprise grew plaintiff constructed a series of one-story buildings around the perimeter of the plot with either corrugated metal or Fiberglas walls. These were, in essence, unheated sheds for the storage of roofing materials and supplies which would not be affected by weather changes. The outside walls of these perimeter buildings and Hooper Cooper Hall formed the street enclosure for the entire complex, except for two sets of gates for ingress and egress. The storage sheds were constructed on parts of Lots 8, 9 1/2 and 10 1/2 and all of Lot 10. The remaining open area was utilized for driveway and parking *22 purposes. The roofs of these buildings were all connected and, in turn, tied in physically to Hooper Cooper Hall so that one could go from one building to another without going into the center yard.
After the fire plaintiff applied for a building permit to construct a one-story fireproof building for the same business use on the old foundation of Hooper Cooper Hall within the confines of Lots 8 1/2 and 9 and containing a total area substantially less than the prior structure. The permit was denied by the zoning officer because of the violation of the use permitted in that zone by the 1969 ordinance. Application was then made to the board of adjustment for a reversal of the determination of the zoning officer, seeking relief on two theories: (1) the right to restore the structure as a protected nonconforming use, and (2) the grant of a variance under N.J.S.A. 40:55-39 (d).
The board of adjustment held a hearing on June 19, 1972 at which evidence was submitted by the applicant and neighboring property owners. The board denied the application for a variance, finding that the use would "substantially impair the intent and purpose of the zone plan and zoning ordinance" and would be "detrimental to the public safety, health and general welfare." As to the appeal from the zoning officer's decision denying the application to restore the nonconforming use, the board concluded that the total destruction of the building known as Hooper Cooper Hall deprived plaintiff of the protection under N.J.S.A. 40:55-48 and sections 701 and 702 of the local ordinance, since they limit the right to restore or repair only in the event of partial destruction.
Plaintiff thereupon proceeded by action in lieu of prerogative writs to review the refusal of the board to grant the requested relief. After issue was joined, plaintiff moved for summary judgment on one facet of his application, claiming a right to the building permit as a matter of law by virtue of the claim that the destruction of the single building in *23 the total complex constitutes a "partial" destruction under the applicable statute and ordinance, so as to permit restoration of the prior nonconforming structure and use.
At the court's suggestion plaintiff supplemented the record before the board of adjustment by additional testimony relating to the characteristics of the structures and their use prior to the adoption of the 1969 ordinance. The operative facts recited above are therefore based not only upon the record before the board of adjustment but also the supplemental testimony presented to the court. In toto, those facts were not controverted, and therefore utilization of the summary judgment procedure is appropriate.
The motion brings into focus the key legal issue in controversy. Does the statutory authorization to continue a nonconforming use or structure by repair or restoration after partial destruction permit such continuance when one of several buildings in a business complex is totally destroyed? This question has not been answered in any reported opinion in the State of New Jersey.
N.J.S.A. 40:55-48 provides:
Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied and any such structure may be restored or repaired in the event of partial destruction thereof.
With similar intent, section 702 of the zoning ordinance of 1969 reads:
702. RESTORATION OF EXISTING BUILDINGS. Nothing in this Ordinance shall prevent the restoration of a non-conforming building partially destroyed by fire, explosion, act of God or act of public enemy, or prevent the continuance of the use of such building or part thereof as such use existed at the time of such partial destruction of such building or part thereof or prevent a change of such existing use under the limitations provided in Section 701.
The legislative policy inherent in these enactments is twofold. First, it protects a use or structure which preexisted *24 a change in zoning law from the effects of the new restrictions. To dictate otherwise would probably result in an unconstitutional deprivation of property without due process of law. Grundlehner v. Dangler, 29 N.J. 256 (1959); Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189 (1955); Arkam Machine & Tool Co. v. Lyndhurst Tp., 73 N.J. Super. 528 (App. Div. 1962). Secondly, it permits restoration or repair of such a nonconforming structure in the event of partial destruction subsequent to the new zoning restrictions, provided that there is no enlargement or extension of the structure or use. Rockleigh Borough v. Astral Industries, Inc., 29 N.J. Super. 154 (App. Div. 1953); Adler v. Dept. of Parks, Irvington, 20 N.J. Super. 240 (App. Div. 1952); Struyk v. Samuel Braen's Sons, 17 N.J. Super. 1 (App. Div. 1951) aff'd 9 N.J. 294 (1952).
The right to restore or repair thus is limited by the caveat that the structure be only partially destroyed. This precondition is imposed in recognition of a policy that preexisting discordant uses should be closely restricted and reduced to conformity as soon as it is possible provided that the restriction is compatible with justice. Hay v. Bd. of Adjustment, 37 N.J. Super. 461 (App. Div. 1955); Grundlehner v. Dangler, supra; Arkam Machine & Tool Co. v. Lyndhurst Tp., supra; Ranney v. Istituto Pontificio Delle Maestre Filippini, supra.
This policy of strict containment of nonconforming uses is balanced however by the underlying concept of fairness and justice which dictates that government shall not deprive a property owner of his investment by legislation adopted ex post facto. Thus, where the destruction of a building is only partial, restoration or repair is permitted to protect and maintain that investment in recognition of the right of the property owner to continued protection of his use free of the restriction imposed subsequent to the vesting of that use.
*25 If, however, a structure is destroyed totally rather than partially, the property owner in effect holds only vacant land and should be controlled by the existing zoning restrictions in the same manner as other owners of undeveloped land. Under such circumstances the dilemma of the property owner  the loss of his investment  is one created by the unfortunate casualty and not by virtue of the power of government.
It is apparent from a perusal of N.J.S.A. 40:55-48 that the Legislature contemplated a fact pattern of destruction of a single structure. It failed to consider or provide expressly for the eventuality of the total destruction of a single unit which is but a part of an overall nonconforming use.
As a consequence, the board contends that a literal construction of the statute calls for the cessation of the nonconforming use on the lot upon which Hooper Cooper Hall was constructed. It urges that the total destruction of that building requires curtailment of the use without consideration of the other structures used in plaintiff's business operation; and that the test for permissible reconstruction under the statute is that the destruction must be partial as to the individual structure, without reference to buildings on other lots. As a corollary, defendant asserts that the division of the property into separately numbered lots on the tax map dictates that the "lot" to be considered in determining whether there was partial or total destruction should be limited to Lots 8 1/2 and 9 and not the entire plot owned by the plaintiff.
There is no doubt that although Hooper Cooper Hall was an entity in the form of a separate structure built long before the other structures, it was but a unit of the whole building complex from a use standpoint for many years prior to the adoption of the 1969 ordinance. This building houses the offices from which the personnel controlled all the buildings and the stock of merchandise stored in them. It was the hub of the wheel without which the business activity in the spokes  the other buildings  could not turn. Indeed, the physical layout supports this conclusion as well. All *26 buildings were connected so that one could go from any building to another without going outdoors. The buildings formed a "U" around the perimeter of the property; and the available open space was used in common for parking and driveway purposes.
Where the destroyed building is so integrated with the total building complex, is it fair or realistic to consider that destruction as total rather than partial within the legislative intent? Manifestly, as far as the property owner and the conduct of his business is concerned, the functional use of the property and its structures has been only partially destroyed by fire; and the ban on reconstruction will result in the practical impairment of his investment in the total business venture not because of the fire but because of the power of government.
In State v. Steinke, 7 Wis.2d 275, 96 N.W.2d 356 (Sup. Ct. 1959), plaintiff owned a plot of land consisting of 53 acres which was operated as a children's bible camp. When initially purchased by plaintiff the property had built thereon an old family residence with 26 rooms and 6 guest houses. Subsequently, a dining hall and four additional cabins were constructed. The entire complex was used for camp purposes as a permitted use until 1953, and thereafter as a nonconforming use because of the change in the zoning ordinance. In 1957 the family residence burned down and was a total loss. The owner applied for a permit to construct cabins which would equal the campers' quarters in the residence destroyed by the fire. The local ordinance permitted restoration of a nonconforming use upon destruction by fire or other casualty, provided that the damage did not exceed 50% of the assessed value. The municipality denied the permit on the basis that the total destruction of the individual building exceeded the 50% limitation. The owner sought relief from the court, contending that the destroyed building involved much less than 50% of the value of all the buildings in the camp complex.
*27 The Supreme Court of Wisconsin held that the statutory percentage must be calculated within the frame of reference of the value of all the buildings utilized in the camp operation. It pointed out:
* * * The 50 per cent rule, which may be reasonable if applied to one building containing a separate use, may not be reasonable if applied to an individual building used jointly with other buildings in a single non-conforming use upon one premises. * * * Suppose that one property is used for an institution or industry housed in several buildings no one of which is worth as much as half the total but each of which is essential to the operation of the whole. In situations of the type suggested the application of the 50 per cent rule to the individual building might well result in a substantial loss of investment out of all proportion to the value of the building destroyed by accident.
* * * We conclude that the question of whether relator had the right to restore the family residence without changing it to a conforming use depends upon whether the fair market value of the destroyed building prior to its destruction was more than 50 per cent of the fair market value of all the buildings on the premises (excluding the cook's cabin) used by relator for its bible camp. If the value of the one building was not more than 50 per cent of the total, then relator could have "restored" the destroyed building.
A statute should be construed in a manner so as to advance its sense and meaning and not according to its strict letter. Fischer v. Fischer, 13 N.J. 162 (1953); Wene v. Meyner, 13 N.J. 185 (1953); Wright v. Vogt, 7 N.J. 1 (1951); San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148 (1958). As noted in Alexander v. N.J. Power & Light Co., 21 N.J. 373 (1956):
* * * The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. [at 378]
In this light the nonconforming use statute should be interpreted to encompass the destruction of a part of an *28 integrated whole of a business enterprise in the same manner as the destruction of a part of an individual structure.
Substance should not be sacrificed to form merely because the lots are divided on the tax map. When the statute speaks of the continuance of a use on the "lot," it does not necessarily mean a lot which has been designated as such for tax purposes. It rather means the plot or parcel of land owned and used as a unit by the property owner. Mere lack of formal consolidation of six lots involved herein should not be the rationale for the destruction of plaintiff's valuable right to continue a nonconforming use.
In fact, the deed into plaintiff described the plot as a single unit through a metes and bounds description. The additional reference to lot numbers is mere surplusage and only inserted for the purpose of further identification. A lot has been defined as "a portion of land that has been set off or allotted, whether great or small, but in common use it means simply a piece, parcel, or tract of land, without regard to size." Edwards v. Derrickson, 28 N.J.L. 39, 45 (Sup. Ct. 1859), aff'd 29 N.J.L. 468 (E. & A. 1861). See also, Lamb v. A.D. McKee, Inc., 10 N.J. Misc. 649 (Sup. Ct. 1932); Burmore v. Champion, 124 N.J.L. 548 (E. & A. 1940); Burmore v. Smith, 124 N.J.L. 541 (E. & A. 1940).
Furthermore, the mere use of the singular term "lot" in the statute does not have the significance attributed to it by the defendant, for the general definitions applicable to all statutes provide that the use of the singular shall be understood to include the plural, unless the context is repugnant to such construction. N.J.S.A. 1:1-2; see also 82 C.J.S. Statutes § 337.
Based upon the foregoing analysis, the court concludes that plaintiff is entitled to restore the nonconforming use which existed in Hooper Cooper Hall prior to the fire. The application and plans submitted for the building permit contemplate a modern one-story fireproof structure on the very foundation of the old frame building. The usable area is *29 less than existed before the fire and the nature of the contemplated use is exactly the same. There is no semblance of extension or expansion of the physical structure or its use. It therefore comports with the containment policy applicable to nonconforming uses. The denial of the permit constituted an illegal invasion of plaintiff's vested right to restore the structure for the continuance of his prior nonconforming use.
In the absence of a dispute in the facts underlying the legality of the denial of the building permit, summary judgment will be entered in favor of plaintiff: (1) setting aside the resolution of the board of adjustment so far as it denies the right of plaintiff to restore the structure as a protected nonconforming use, and (2) directing the issuance of a building permit in accord with the filed application.