514 A.2d 282

Schuylkill Haven Bleach & Dye Works, Inc., Appellant *v.* The Zoning Hearing Board of the Borough of Schuylkill Haven, Appellee.

Argued May 12, 1986, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Herbert G. Rupp, Jr., Rupp and Meikle,* for appellant.

*Leroy G. Adams, Lipkin, Marshall, Bohorad & Adams,* for appellee.

OPINION BY JUDGE DOYLE, August 27, 1986:

Schuylkill Haven Bleach & Dye Works, Inc. (Appellant) appeals from an order of the Court of Common Pleas of Schuylkill County which affirmed the decision of the Zoning Hearing Board of the Borough of Schuylkill Haven (Board) denying Appellant's application to reconstruct a nonconforming use destroyed by fire.

Appellant is the owner of an industrial business located in the Borough of Schuylkill Haven. Prior to May 1, 1982, this business consisted of a bleach and dye plant on Market Street, an adjoining office building on St. Peters Street, and a second plant on St. James Street which was not contiguous to either the Market Street or St. James Street properties. The Market Street plant and office building were located in an R-2 residential district, and were valid nonconforming uses. The St. James Street plant, some 2000 feet distant from the Market Street plant, was in an industrial district, and conformed to current zoning.

On May 1, 1982, the Market Street plant was damaged in a fire. As a result, the roof and walls of the one-story plant were completely destroyed. All that remained were the basement and eighty percent of the concrete floor slabs which had served as the first floor. Thereafter, Appellant continued to operate its business using the adjoining office building and the St. James Street plant.

On June 17, 1983, Appellant applied to the zoning officer for permission to begin reconstruction of the Market Street plant. The application was refused on the basis of Section 5.700 of the Schuylkill Haven Zoning Ordinance, which states:

> Any legal nonconforming use may be continued, repaired, maintained and improved except as provided below, subject to the review and approval of the Zoning Hearing Board.
>
> a. *Enlargement*—such nonconforming use may not be enlarged more than 25 percent of the existing floor or use area and/or lot area.
>
> b. *Restoration*—If less than 50 percent of the floor area of any such nonconforming use is damaged, it may be restored or reconstructed within a period of 18 months of the date of the damage.

The Board upheld the officer's determination, finding that the damage to the Market Street plant involved more than fifty percent of the floor area of that building, and that therefore the restoration was prohibited under the Ordinance. On appeal, the court of common pleas, without taking additional evidence, affirmed the decision of the Board.

On appeal to this Court[1] Appellant argues that the Board and the trial court erred in their interpretation of

---

[1] Where the court of common pleas takes no additional evidence, our scope of review is limited to a determination of whether the zoning hearing board abused its discretion, committed an error

the term "floor area" as it is used in the zoning ordinance. Appellant urges that it should be interpreted to mean the actual *flooring* of the nonconforming structure. Since eighty percent of the concrete slabs which made up the first floor of the plant remained intact, along with all of the basement, Appellant contends that less than fifty percent of the "floor area" of the building had been damaged.

We cannot accept this argument. It is true, as Appellant argues, that the term "floor area" refers to the square foot measure of a floor surface. But simply proving the existence of such a "floor area" does not satisfy the provisions of this ordinance. The provision clearly requires that "less than 50 percent of the floor area of any . . . nonconforming use [be] *damaged*" (emphasis added) before restoration is permitted. The determining factor in the ordinance provision is, therefore, not whether the "floor area" remains in existence, but whether it remains undamaged. Since the term "damage" in this context refers to such damage as would require restoration or reconstruction, it follows that the floor area has been "damaged" for purposes of this section when it is no longer usable without such restoration or reconstruction.

In the present case, the fire at the Market Street plant had destroyed the roof and the walls of the first floor. The floor area itself, although still in existence, was unusable for its intended purpose because it had no structure above it. Thus the floor *area* had been "damaged" in its entirety. Since the trial court found that the first floor, which was totally damaged, consisted of 13,813 square feet, and the basement, which was not

of law or made factual findings not supported by substantial evidence in the record. *DiMartino v. Zoning Hearing Board of Newtown Township,* 93 Pa. Commonwealth Ct. 498, 502 A.2d 294 (1985).

damaged, consisted of 5,630 square feet, the trial court properly concluded that more than fifty percent of the building's floor area had been damaged.

Appellant also argues that the Board and the trial court should have determined the percent of damage to the floor area in relation to the total floor area of its *entire* industrial complex in the Borough, including the floor area of the adjacent office building and the St. James Street plant. Appellant urges that this approach has been adopted by other state courts, citing the New Jersey case of *Krul v. Board of Adjustment of the City of Bayonne,* 122 N.J. Super. 18, 298 A.2d 308 (1972), *affirmed,* 126 N.J. Super. 150, 313 A.2d 220 (1973). *See also Application of Richards,* 41 Misc. 2d 850, 246 N.Y.S.2d 746 (1962); *State ex rel. Covenant Harbor Bible Camp v. Steinke,* 7 Wis. 2d 275, 96 N.W.2d 356 (1959). These cases all deal with a complex of nonconforming buildings on one contiguous tract, and hold that where one of the buildings within the complex is damaged, the entire complex must be considered in determining the percentage of damage for purposes of the applicable zoning ordinance limiting reconstruction. *See, e.g., Krul,* 122 N.J. Super. at     , 298 A.2d at 313. The facts of the present case are distinguishable. The St. James Street plant, consisting of 75,000 square feet of floor area, was not contiguous to the damaged plant but was located some 2000 feet away, and, further, was located in an industrial zone and was not itself a nonconforming use. Thus, the St. James Street property was simply not part of one nonconforming "complex" such as was the case in *Krul.*

With respect to the remaining buildings, it is true that the damaged Market Street plant and adjacent office building were both nonconforming and located on contiguous lots, and thus could be considered a single nonconforming "complex." We conclude, however, that

even if we were to follow the "business complex" approach as to these two buildings the evidence would still not support a reversal. The Board found that 13,813 of the 19,443 square feet in the Market Street plant had been damaged. Even adding the 3,776.84 square feet of the adjacent office building to the total floor area of the "complex", the floor area damaged would still constitute more than fifty percent of the total floor area of the complex. Thus, we must reject Appellant's contention that the Board and the court erred by not considering the total floor area of the entire business complex.

For the foregoing reasons we conclude that the trial court was correct in affirming the Board's order denying Appellant's application to reconstruct its nonconforming structure. Accordingly, we affirm the trial court's order.

ORDER

NOW, August 27, 1986, the order of the Court of Common Pleas of Schuylkill County, No. S-1669-1983, dated August 12, 1985, is hereby affirmed.