226 N.J. Super. 397 (1988)
544 A.2d 439
WILLIAM C. PILONE, ET AL., PLAINTIFFS,
v.
WAYNE A. BLANDA, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Monmouth County.
Decided May 20, 1988.
*398 Sheppard Massar for plaintiffs (Schragger & Massar, attorneys, Sahbra Smook Jacobs on the brief).
*399 John O. Sitzler, Jr. for defendants (Sitzler, Weishoff & Sitzler, Attorneys).
McGANN, J.S.C.
Plaintiffs are the contract purchasers of vacant land owned by defendant-seller Wayne A. Blanda. They bring this action for specific performance of that contract and join as a defendant, Blanda's wife, Irene. She did not sign the contract. Title to the property in question is vested in Wayne A. Blanda, only, by virtue of a deed, dated August 2, 1982, and recorded August 5, 1982.
The entire tract as described in the 1982 deed is an 80-acre farm. Blanda and his wife (whom he married in 1983) live in the farmhouse on the property.
The contract is dated October 23, 1986. Under its terms, Blanda agreed to convey a seven-acre part of the 80-acre farm. The purchase price is $49,000. Plaintiffs paid a deposit of $25,000 and are obliged to pay the balance of $24,000 at closing. The conveyance was subject to subdivision approval to be obtained by the purchasers. They did so at considerable expense. Approval was granted on December 1, 1986. Blanda, thereafter, sought delays of the closing to which the purchasers agreed up to July 1987. Thereafter, they pressed him to close and finally made "time of the essence" for September 2, 1987. He refused to deliver a deed at that time. He had no legal justification for his refusal. Plaintiffs seek a judgment for specific performance against him. They are entitled to it. However, that would not resolve their problem. Under the contract, plaintiffs are to receive marketable and insurable title. Their title company will not insure the title unless Irene Blanda joins in the deed. She refuses to do so. The issue then is whether she has an interest and, if so, should she be compelled, on terms, to sign the deed. The resolution of that issue *400 depends on a judicial reading of N.J.S.A. 3B:28-3.[1] The statute provides as follows:
As to real property occupied jointly by a married person with his or her spouse acquired on or after May 28, 1980, as their principal matrimonial residence, every married person shall be entitled to joint possession thereof with his or her spouse during their marriage, which right of possession may not be released, extinguished or alienated without the consent of both spouses except by judgment of a court of competent jurisdiction. All other real property owned by either spouse which is not the principal matrimonial residence may be alienated without the consent of both spouses.
The statute was one of the series of bills adopted by the Legislature in 1979 to revise the Probate Code of New Jersey. The legislative purpose was to bring New Jersey probate law into closer conformity to the Uniform Probate Code.
The Uniform Probate Code (Section 2-113) abolished estates of dower and curtesy. The commissioners were of the view that dower and curtesy were anachronistic burdens on the alienation of property by its owner. When the owner died intestate, the surviving spouse was amply protected by laws of intestate succession. See N.J.S.A. 3B:5-3. One spouse could, however, cut off the survivor by leaving little or nothing by will. The commissioners suggested that such a harsh possibility be obviated by providing for the elective share of the surviving spouse. N.J.S.A. 3B:8-1 et seq. With the abolition of dower and curtesy, there would no longer be protection to a spouse against the life-time divestiture of real property by the owner-spouse. That possibility was not addressed in the model code. See generally Uniform Probate Code (1983 ed.) Commentary to § 2-113 and 2-201.
Our Legislature apparently noted that gap created by the Uniform Probate Code. If dower and curtesy were abolished,[2] then the title-holding spouse, during his or her lifetime, could convey all of his or her real estate without limitation and *401 potentially render the elective share of little value to the survivor. Therefore, in enacting N.J.S.A. 3A:35-5, dower and curtesy were abolished but with an exception. That exception is now N.J.S.A. 3B:28-3. Under its terms defendant, Irene Blanda, has a property interest in the "principal matrimonial residence" entitling her to a "right of possession" of which she may not be involuntarily deprived "except by judgment of a court of competent jurisdiction."
In circumstances such as those presented here, under prior common law, a court of equity would not compel the owner-husband to specifically perform his contract to sell, when the wife had not joined in it and refused to sign the deed. Bateman v. Riley, 72 N.J. Eq. 316 (Ch. 1906). Two exceptions were made to that rule  in order to avoid an unjust result. The first applied when it could be shown that her refusal was a device arranged by the husband to evade his contractual obligation. The second arose when the proofs showed that the wife was aware the contract was being signed; acquiesced in it by her conduct, and then refused to sign the deed for an ulterior motive  such as extracting the payment of a higher price. Stein v. Francis, 91 N.J. Eq. 205, 206 (Ch. 1919). In such case a court of equity would decree specific performance against the husband and require that he make adequate financial arrangements to protect the buyer against the wife's future claim for dower consummate. Id. at 212.
As stated in 7A N.J.Practice (Clapp & Black, Wills and Administration) § 1658:
The wife's interest before the death of her husband, called an "inchoate right of dower," is difficult to define except by stating its incidents. Though not an estate in land, it is a fixed and presently vested valuable interest in every estate of inheritance of which her husband is seized during their coverture and which was acquired by him prior to May 28, 1980, the interest is however defeasible in the event she predeceases him. Having once attached to land, it cannot be weakened or destroyed by legislative action.
Thus the statute abolishing dower and curtesy has application only to real property acquired by a married person after May 28, 1980, the effective date of *402 the statute. It is an encumbrance on the property, and hence its existence constitutes a breach of a covenant against encumbrances.
The interest constitutes part of the separate property of the wife, and she may properly demand payment from her husband for its release and cannot be compelled to relinquish it except for her voluntary act. However, she cannot assign, sell or convey it away as a separate estate. Nor can it be taken on execution or applied to the satisfaction of her debts. [Id. at 256]
That which the Legislature created in N.J.S.A. 3B:28-3 was something more than inchoate dower. By its terms, it is a possessory right. No matter which spouse holds legal title, when once, as married persons, they together occupy a residence as their principal matrimonial residence, both have a right to continued possession of it so long as their marriage endures. Neither can affect the right of possession of the other unless the other consents. However, the right of possession may be "released, extinguished or alienated ... by judgment of a court of competent jurisdiction." N.J.S.A. 3B:28-3.
What did the Legislature intend by "marital residence." Here, for example, the marital residence (and only residence) of the Blandas is the house in which they live. As the subdivision map in evidence shows, that house lies close to a public road on which the farm fronts. The house is surrounded by the 80-acre farm. The seven-acre parcel covered by the contract lies in a corner of the farm and fronts on the same road. Did the Legislature intend joint possessory rights in both spouses not only in the lands immediately about the house but in the entire 80-acre farm? I find that it did not.
The Legislature is presumed to act against a background of well-settled property law and existing statutory law as well as in the context of the times. Specifically, it is presumed to be aware of the concept of "curtilage" and the law of land subdivision.
The curtilage of a dwelling house is the land space around it, which is necessary, convenient and habitually used for the family purposes and the carrying on of domestic employments. It includes the garden, if there be one, and need not be *403 separated by a fence from other lands under the same ownership. Black's Law Dictionary (4 ed. 1951) at 460.
The case of Italian-American B & L Ass'n v. Russo, 132 N.J. Eq. 319 (E. & A. 1942) is enlightening. The opinion resulted from a foreclosure action in which it was not clear what property was intended to be covered by the mortgage. The trial court had reformed the description on finding that the parties intended to cover the curtilage surrounding the mortgaged home. The Court of Errors and Appeals affirmed with the following pertinent statement of the law:
In Hartfield v. The Pennsylvania Company for Insurance, § c, 89 N.J. Eq. 45 Vice-Chancellor Leaming said:
"In 15 Am. & Eng.Ency.L.(2d ed.) 771, it is stated that in a device or grant the word `house' will carry the land upon which the house is built and the curtilage. The authorities there cited adequately support the rule as stated. In 10 Ibid. 353, substantially the same rule is stated as follows:
"`At common law the term "dwelling house" included not only the premises actually used as such, but also such out-buildings as were within the curtilage, or courtyard, surrounding the mansion house.'
"In Derrickson v. Edwards, 29 N.J.Law 468, 474, our Court of Errors and Appeals, in a mechanics' lien case, has defined a curtilage as follows: `A curtilage is a piece of ground within the common enclosure belonging to a dwelling-house, and enjoyed with it, for its more convenient occupation.' In harmony with these views Chancellor Runyon held, in Lanning v. Sisters of St. Francis, 35 N.J. Eq. 392, 401 that the following devise: `I will my house to * * * No. 160 Rose Street Trenton' was a devise of all of the land of testatrix adjacent to the house that had been used in connection with the house; and in Inhabitants of Phillipsburg v. Bruch's Executor, 37 N.J. Eq. 482, 485, Vice-Chancellor Van Fleet gave approval of Bennett v. Bittle, 4 Rawle 339, and Rogers v. Smith, 4 Pa.St. 93, to the effect that a devise of a `house,' without further descriptive words, is to be deemed to be synonymous with messuage and to pass all within the curtilage of the house." [Id. at 323]
Thus, where the description of the property is by way of reference to "house" or "home" or if a mechanic's lien is to attach for work performed on a structure, the real estate conveyed or covered by the lien will be realistically restricted to the extent comprised by the term "curtilage"  when such issues are presented to a court of equity.
*404 In addition, the process of subdivision of farm property into building lots is commonplace in our society. That process has already begun on this farm. Should there be a major subdivision of the remainder and the farm house remain as a dwelling,[3] the subdivision process will require that an appropriate lot be reserved to the dwelling in accordance with the local zoning ordinance.
A similar result prevails under the "Farmland Assessment Act of 1964," N.J.S.A. 54:4-23.1 et seq., whereby the land containing the residence and immediately surrounding acreage is excluded from the farmland assessment covering the balance of the agricultural lands. N.J.S.A. 54:4-23.11. Terhune v. Franklin Tp., 107 N.J. Super. 218 (App.Div. 1969).
Therefore, the following conclusions may be drawn. In the usual case of a house on a residential lot, the provisions of N.J.S.A. 3B:28-3 are clear. If it is the principal marital residence neither spouse may be deprived of a possessory right.
Where, as here, the marital residence is on a large tract, capable of subdivision, the possessory right of the nonowner spouse extends no further than the curtilage prior to subdivision, or to the remaining lot after subdivision.
The seven-acre parcel in this case forms no part of the curtilage of the farm-house, marital residence. Wayne Blanda holds title to that parcel unencumbered by an interest of his wife by virtue of N.J.S.A. 3B:28-3.
Therefore, judgment for specific performance of the contract is entered against Wayne Blanda. Title closing will take place within 30 days of the date of this opinion. The usual closing or settlement adjustments will be made as of September 25, 1987  the date for which plaintiffs made time of the essence.
NOTES
[1] Enacted originally as N.J.S.A. 3A:35-5 (L. 1979, ch. 485) with an effective date of May 20, 1980.
[2] N.J.S.A. 3B:28-2.
[3] It cannot be sold or removed without Irene Blanda's consent.