JOSEPH PIERETTI, JR. AND MARIE PIERETTI, INDI-VIDUALLY AND T/A BROOKDALE BEVERAGE CO., PLAINTIFFS-APPELLANTS, v. MAYOR AND COUNCIL OF THE TOWN OF BLOOMFIELD AND BOARD OF ADJUSTMENT OF THE TOWN OF BLOOMFIELD, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued February 20, 1961—Decided June 30, 1961.

*Mr. Fred G. Stickel, III* argued the cause for plaintiffs-appellants (*Mr. Robert J. Vogel, Jr.* and *Messrs. Camarata & Colonna,* attorneys).

*Mr. George B. Welle* argued the cause for defendants-respondents.

*Mr. David A. Rappeport* argued the cause for intervening defendants-respondents.

The opinion of the court was delivered by

SCHETTINO, J.   Plaintiffs instituted an action in lieu of prerogative writ to review the determination of the Town Council of Bloomfield in refusing to concur in the recommendation of the board of adjustment to grant a variance to plaintiffs.  *N. J. S. A.* 40:55–39(d).  The Law Division allowed owners of properties within 200 feet of plaintiffs' property to intervene as defendants.  The Law Division dismissed the complaint.  Plaintiffs appealed to the Appellate Division and, while the appeal was pending, we certified it on our own motion.

In 1944 plaintiffs applied for a variance covering a portion of the premises presently in question.  The application was denied and the denial was affirmed.  *Pieretti v. Johnson,* 132 *N. J. L.* 576 (*Sup. Ct.* 1945). The question whether this denial acted as a bar to a hearing on the merits in the present matter was raised and fully argued before the board of adjustment.  The board held, by a 5 to 0 vote, that the doctrine of *res adjudicata* was not applicable.

The Town Council, however, did apply the doctrine and plaintiffs question the propriety of that application.  They contend that the Council failed to ascertain whether there was factual support for the board's decision to refuse to apply the doctrine.  They claim that, instead, the governing body summarily decided that *res adjudicata* should be applied upon the basis of a then recent Appellate Division decision, *Russell v. Tenafly Bd. of Adjustment,* 53 *N. J. Super.* 539 (*App. Div.* 1959), which was reversed subsequent to the Town Council's action, 31 *N. J.* 58 (1959).  They also contend that the Council failed to consider the recommendations of the board of adjustment on their merits.

At oral argument some confusion existed as to just what the Town Council had done and how it had acted.  Reference was there made to a letter opinion of the Town Attorney to the Town Council concerning plaintiffs' matter.  At our request copies were sent to us.  The Attorney clearly advised the Town Council that it could do nothing but deny the

present application upon the basis of *res adjudicata*. As we read the record, no attempt was made by the Town Council to evaluate the application, the facts adduced by plaintiffs and the objectors, and the findings and conclusions of the board of adjustment.

We stated in *Russell*, at *p*. 65, that *res adjudicata* is applicable on a second application, but the fact "That the same owner and same property are involved in the second application for a variance is not alone sufficient to act as a bar; the objector must also show that the second application is substantially similar to the first, both as to the application itself and the circumstances of the property involved." Thus, the Town Council should have considered plaintiffs' application on the entire record and should have considered the findings and conclusions of the board of adjustment. Recently, we pointed out that "the governing body may draw its own ultimate conclusions from the facts adduced before the board." *Reinauer Realty Corp. v. Borough of Paramus*, 34 *N. J.* 406, 415 (1961). However, in fairness to the Town Council, plaintiffs did not submit a copy of the stenographic testimony even though the Town Clerk had requested plaintiffs and the objectors to submit "such material as they might wish." Absent the stenographic record, the Town Council could not have so acted.

Ordinarily, we would remand. In view of the fact that the record was presented to us, we have decided to bring a finality to these proceedings. *Lowenstein v. Newark Board of Education*, 35 *N. J.* 94, decided May 22, 1961. Moreover, even if the Town Council had adopted the board of adjustment's recommendations, we would have to reverse on the grounds that such action was arbitrary, capricious and a manifest abuse of its discretionary authority. *Andrews v. Ocean Twp. Bd. of Adjustment*, 30 *N. J.* 245, 251 (1959).

Plaintiffs, trading as Brookdale Beverage Co., are the owners of property known as 218-228 Sylvan Road, Bloomfield. The property has a total frontage of 145' on Sylvan Road and a depth of approximately 780'. The property,

situated in "Small Volume Residential Zone A," has a combination residential and industrial use. Plaintiffs reside in the front and conduct their business in the rear. Plaintiffs have been living on the property since 1926 but took title to part of the premises known as the Herbstreith tract on October 30, 1935, and to the Ochsner tract on October 15, 1943, after the adoption by the Town of Bloomfield of its Zoning Ordinance on December 15, 1930.

The Herbstreith tract was approximately 70' x 780' and makes up the westerly portion of plaintiffs' property. The Ochsner tract which makes up the rest was heavily wooded. The property to the west, owned by people named Patterson, has been used as an express business since the 1920s. The properties to the east are residential. Less than a block away from plaintiffs' property is a recently constructed public school.

In January 1944, when plaintiffs sought a variance to erect a new building on the Herbstreith tract, the board of adjustment denied the request, holding by a 5 to 0 vote as follows:

"To grant the application would extend or enlarge the existing use. The neighborhood is strictly residential and any enlargement or extension of the present use would be detrimental to the surrounding property. It is evident from the testimony and the exhibits that the building has from time to time since about 1930 or 1931, been enlarged and remodeled until now the business conducted is objectionable to the neighbors and to enforce the ordinance will not cause undue hardship."

In affirming, the former Supreme Court stated that "an extension of the business * * * would be a serious disadvantage to the residents of the immediate vicinity, which is a strictly residential area." *Pieretti, supra,* 132 *N. J. L.,* at *p.* 577.

Plaintiffs continued their business on the premises as a nonconforming use and the business expanded. In June 1958 they applied for a building permit to put up a building, locating it on parts of both tracts. The permit was denied,

and, after the denial, plaintiffs applied to the board of adjustment for a variance pleading exceptional and undue hardship. The board of adjustment voted three to two to recommend to the Town Council the granting of the variance.

Plaintiffs submitted plans showing a substantial industrial development. These plans showed an existing structure of about 7,000 square feet (although defendants claim the area to be 9,300 square feet), straddling the Herbstreith and the Ochsner tracts, and a proposed building 81′ by 255′ enlarging the facilities to approximately 18,500 square feet. The dwelling on Sylvan Road was to remain, a visitors parking facility was to be created in front of the property, an employees' parking lot was to be created in back for 32 cars, a retaining wall was to be constructed, the balance of the Ochsner tract was to have lawn and landscaping, an expanded underground water filtering system was to be installed, and a new driveway was to be laid on the west side. The new building was to be two stories high with a flat roof and with a series of windows on the east side of the two story stucco wall facing the houses of neighbors.

In *Grundlehner v. Dangler,* 29 *N. J.* 256, 269 (1959), we pointed out that as a variance may upon proper showing of special reasons within *N. J. S. A.* 40:55–39(d) be granted to create a new nonconforming use in a residential zone, it may clearly be granted to enlarge a pre-existing nonconforming use. But before plaintiffs can become beneficiaries of that principle, they have preliminary hurdles to overcome. Two critical findings are required to be made by the board of adjustment to warrant a recommendation for a variance under *N. J. S. A.* 40:55–39(d), namely, (1) that "special reasons" exist for the variance, and (2) that the variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and the zoning ordinance. *Andrews v. Ocean Twp. Bd. of Adjustment,* 30 *N. J.* 245, 249 (1959).

The resolution of the board of adjustment recommending the granting of the variance stated in part that there

presently exists a nonconforming use for manufacturing and bottling of soda water and bottled goods, the storage, out-doors and indoors, of bottles and cases and the sale thereof on the premises, both wholesale and retail, and the parking of trucks and automobiles; that several of the operations are now conducted in the open; that the premises are un-sightly by virtue of lack of buildings to accommodate vehicles and the storage of cases and bottles; that the enclosure of the operations will not be detrimental to the value of the premises in the residential area, but will in fact tend toward the improvement of the said area; that the trucking busi-ness adjoins the subject premises on the west; that the relief sought is in the public interest which will be advanced by recommending the granting of the present application, and that relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.

Plaintiffs' 1944 application for a variance covered only the Herbstreith tract and the present application proposes a structure to be built partly on both tracts. Plaintiffs rely on *Russell, supra,* 31 *N. J.* 58 (1959). *Russell* is factually distinguishable. There the first application was for a variance to permit the erection of a specified dwelling on a lot in violation of setback and minimum area requirements of the ordinance. We held that a second application was not barred as it provided for the setback of the building to be increased by 20 percent and the total area to be occupied by the dwelling was decreased by 6 percent and therefore the second application was in keeping with the zoning re-quirements of the neighborhood.

But here the 1958 application covers more residen-tially zoned land to be used for enhanced industrial purposes. The proposed building is larger and would have two stories, containing more than three times the amount of floor space as set forth in the 1944 application. In addition to the extra size of the building, there was to be a 32 car parking lot, new water facilities installed, and an apparent reduction

in the buffer zone between it and the residential properties in the area. Moreover, the testimony shows that the area had become more, if not completely, residential, with new homes in the area, and with a modern public school less than a block away. The 1958 application is clearly much more objectionable than the 1944 one. The variance applied for in both applications was for a greater nonconforming industrial use in an intensified residential zone.

Moreover, if there be any exceptional and undue hardship upon the plaintiffs, it results from their own acts. They acquired both tracts of land after the zoning ordinance was adopted in 1930 and thus they purchased the land with knowledge that such properties were in a one-family residential zone. In their 1944 case plaintiffs' counsel stated that the second tract had been purchased subject to the zoning ordinance. There is no doubt that there has been an expansion of the plaintiffs' business, and it also appears that plaintiffs, without permission or authority, expanded their own nonconforming use. For example, one of the exhibits in evidence shows growth in building area from 1,400 square feet in 1937, to 2,280 square feet in 1941, to 5,800 square feet in 1944 and finally to 9,300 square feet in 1958. *Cf. Black v. Town of Montclair,* 34 *N. J.* 105, 118 (1961).

Plaintiffs testified in 1944 that they were using six trucks and were employing 11 people. In 1958 they had 15 trucks and were employing 42 people. One can reasonably conclude that plaintiffs have expanded a nonconforming use without permission and if hardship results, plaintiffs brought it about. We cannot sanction such actions. *Mocco v. Job,* 56 *N. J. Super.* 468, 470 (*App. Div.* 1959).

From the foregoing we are satisfied that *res adjudicata* would have to be applied especially in view of the undoubted extension of the nonconforming use. *Russell, supra.* Further, plaintiffs have not established "special reasons" for obtaining a variance. Nor have plaintiffs shown that the variance applied for would not substantially impair the

zoning scheme and would not cause substantial detriment to the public good. *Grundlehner, supra,* 29 *N. J.,* at *p.* 271. Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.