73 N.J. Super. 528 (1962)
180 A.2d 348
ARKAM MACHINE & TOOL CO., A CORPORATION OF NEW JERSEY, ET AL., PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF LYNDHURST, A MUNICIPAL CORPORATION, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1962.
Decided April 19, 1962.
*529 Before Judges PRICE, SULLIVAN and LEWIS.
*530 Mr. James A. Breslin argued the cause for appellants.
Mr. Murray A. Laiks argued the cause for respondents (Messrs. Heller & Laiks, attorneys; Mr. Laiks, of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendants Township of Lyndhurst, its board of adjustment and the building inspector, appeal from a judgment of the Superior Court, Law Division, directing the building inspector to issue certificates of occupancy to plaintiffs Arkam Machine & Tool Co. (Arkam) and Vanity Optical Mfg. Co. (Vanity), corporations of the State of New Jersey.
On April 13, 1939 the township adopted a zoning ordinance which placed premises known as 730 Fifth Street, Lyndhurst, New Jersey (on which was erected a one-story factory building) in an "A" residence zone. At that time the subject property was occupied by Sprague Manufacturing Co., Inc. (Sprague), then engaged in the business of manufacturing "music boxes." Sprague, depending upon the season, engaged between 20 and 80 employees. The biggest industrial machine in operation was a 125-ton press, in addition to which there were five other presses which were "quite large." Sizable trucks were "often" used in connection with this business. Paul Otto was the active head of Sprague, and he carried on the company's affairs uninterruptedly until his death on November 18, 1951. Thereafter the business on a smaller scale was conducted by his widow and others until April 28, 1959, when the premises were sold to the plaintiff Arkam, a company engaged in the manufacturing of small blades  an industrial business characterized as "light manufacturing."
Prior to assuming possession, Arkam, through its attorney, without conceding the necessity for doing so, sought to obtain a certificate of occupancy from Lyndhurst; the municipality refused to act, taking the position that such a certificate was not necessary since the nonconforming use was still "light industrial."
*531 On November 1, 1959 Arkam leased a portion of the premises to Vanity, which manufactures frames for glasses. The combined number of employees of both Arkam and Vanity is "[a]bout five or seven. * * * It may be a little more. I hope it will be more. * * * Seven to nine." Plaintiffs employ machinery "quite smaller" than the equipment used by Sprague. Their largest press weighs 14 tons, and they use a "car" for their transportation needs.
On April 26, 1960 both Arkam and Vanity were charged by the building inspector of Lyndhurst with occupying the premises without certificates of occupancy and were convicted, in the municipal court, for violating the local ordinance; sentence thereon was postponed on condition that they apply for certificates of occupancy. On May 11, 1960 plaintiffs made such applications, and they were denied. An appeal was taken to the Board of Adjustment of the Township of Lyndhurst, which, after hearing, denied the applications. Arkam and Vanity thereupon filed a complaint in lieu of prerogative writs to review the adverse determination of the board. The trial court concluded that the action of the board of adjustment in refusing to issue the requested occupancy certificates was arbitrary and discriminatory and should be set aside, and the building inspector was directed to issue the certificates. It is from this judgment that defendants appeal.
We are convinced after a studied review of the record that the trial judge, in reversing the board of adjustment, reached a sound and proper conclusion. The board, in support of its determination, assigned the following reasons:
"SINCE; the issuance of the same will impair the local `Zoning Ordinance,' and
1  The applicant has not sustained the burden of proof necessary to warrant the issuance of a Certificate of Occupancy.
2  The application does not list reasons for granting the Certificate and no testimony was given to the effect.
3  The property is located in an `A' residential zone and the applicant has not advanced reasons for the granting of a variance nor has this been requested.
*532 4  The issue of abandonment is not one validly to be assumed by this Board, for the purposes under consideration and therefore this Board will not consider the same."
Plaintiffs did not seek a variance. Their applications for certificates of occupancy were premised upon a continuation of a nonconforming use of the subject property without enlargement, extension or substantial change in the physical structure or the functional use thereof; and the proofs were directed to the establishment of that status. We note, as did the trial judge, that the "resolution of the Board of Adjustment does not find that there is any change in the use." The issue of abandonment was removed by the board, and any implication in its findings that plaintiffs were no longer protected by the original nonconforming use was not "substantially grounded in competent evidence." Dolan v. DeCapua, 16 N.J. 599, 612 (1954); cf. Reinauer Realty Corp. v. Paramus, 34 N.J. 406 (1961).
The zoning statutes in this State specifically provide that a nonconforming use "existing at the time of the passage of an ordinance may be continued * * *." R.S. 40:55-48. The familiar policy firmly established by our decisional law is that "pre-existing nonconforming uses must be contained, consonant with the spirit of a unified zoning plan." See Grundlehner v. Dangler (concurring opinion by Justice Burling), 29 N.J. 256, 274 (1959), and the authorities therein cited. A change which is de minimis, however, is not detrimental to the philosophy of containment. Ibid.
A nonconforming use is not restricted to the identical particular use which was in existence at the time of the enactment of the zoning ordinance, but embraces the same or substantially similar use within the zoning classification. See North American Building & Loan Ass'n v. Board of Adjustment of New Brunswick, 117 N.J.L. 63 (Sup. Ct. 1936); Schaible v. Board of Adjustment, Tp. of Millburn, 15 N.J. Misc. 707, 194 A. 388 (Sup. Ct. 1937); Lane v. Bigelow, 135 N.J.L. 195 (E. & A. 1947); Stout v. *533 Mitschele, 135 N.J.L. 406 (Sup. Ct. 1947); Kramer v. Town of Montclair, 33 N.J. Super. 16 (App. Div. 1954), cited in Heagen v. Borough of Allendale, 42 N.J. Super. 472 (App. Div. 1956). See also Moore v. Bridgewater Tp., 69 N.J. Super. 1 (App. Div. 1961); 1 Yokley, Zoning Law and Practice (2d ed. 1953), sec. 149, p. 366; 2 Metzenbaum, Law of Zoning (2d ed. 1955), ch. X-g-(3), pp. 1241-1243; 8 McQuillin, Municipal Corporations (3d ed. rev.), sec. 25.202, p. 505.
Appellants contend that there has been an enlargement of the nonconforming use because the premises are now occupied and used by two different manufacturing concerns, whereas prior to the enactment of the zoning ordinance only one manufacturing company occupied and used said premises. This argument, standing alone, is invalid. The test is "use" and not ownership or tenancy. We emphasize the pervading philosophy in favor of restricting rather than increasing a nonconforming use and the essential aim toward zoning conformity as soon as possible and compatible with justice, but, in doing so, we must not override fundamental property rights and "suggested constitutional requirements of due process." Grundlehner v. Dangler, supra, 29 N.J., at pages 262, 263. The proofs in the record before us reveal constriction rather than enlargement, a continuation of "light manufacturing" of a lesser degree with smaller equipment, the employment of fewer employees and the elimination of the trucking facilities previously identified with the manufacturing activities at the premises. There is no cogent reason supported by substantial and competent evidence to sustain the action of the board of adjustment.
The judgment of the trial court is affirmed.