AT & T COMMUNICATIONS, A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF BEDMINSTER, DEFENDANT.

Superior Court of New Jersey
Law Division Somerset County

Decided February 28, 1986.

*Raymond R. Trombadore* for AT & T Communications (*Raymond R. & Ann W. Trombadore,* attorneys).

*John M. Lore* for Board of Adjustment of the Township of Bedminster (*DeMarco & Lore,* attorneys).

ARNOLD, J.S.C.

This is an action in lieu of prerogative writs which raises the issue of whether the zoning power is implicated by the decision of a property owner to sub-contract its in-house banking operations to a commercial bank.

Plaintiff, AT & T Communications, occupies office buildings and garages on a 450–acre tract of land near Highway 206 in Bedminster Township. There are three interconnected office buildings of five stories each which provide over 750,000 square feet of office space. In addition, there are three garages which contain parking spaces for the cars of some 3,500 employees.

This complex, located more than one-half mile from the property lines, was completed in 1975 after extensive site plan review and approval by Bedminster Township. Until January 1, 1984, it was the headquarters of the long lines department of AT & T. Since January 1, 1984, it has been part of the headquarters of AT & T Communications. Presently, about 3,300 employees and contract support personnel work on the premises. From its inception, the plans for the buildings included numerous support services for AT & T employees including cafeterias, lounges, gift shop, credit union facilities, and a banking center. The banking center's operations include cashing employee paychecks and personal checks, processing cash advances and vouchers and selling travelers checks. When the buildings were completed, the banking center was operated by employees of the long lines division of AT & T. It is now operated by employees of AT & T Communications.

In the winter of 1984, AT & T Communications entered into an agreement with the Summit Trust Company. Pursuant to that agreement, the Summit Trust Company agreed to take over operation of the banking center at the Bedminster complex and to operate the center as a retail branch bank to serve the needs of AT & T employees. AT & T has determined that it will reduce expenses by contracting the operation of this facility to an outside entity, as it does with its cafeteria service. Summit Trust Company will use the space presently occupied by the AT & T banking center. No structural changes are involved. The banking center services will continue to be available only to AT & T employees and not to members of the general public. Pursuant to the agreement, Summit Trust Company is prohibited from placing external signs or advertising regarding this location. In consideration for the Summit Trust Company agreeing to perform the banking center operations now performed by AT & T employees, AT & T agreed that Summit Trust could provide additional banking services, such as checking and savings accounts and loans to employees. The

commissioner of banking has approved Summit Trust Company's operation of the AT & T banking center.

On December 21, 1984, the zoning officer of Bedminster Township informed the manager of banking relations of AT & T that AT & T would not be permitted to enter into any agreement with an outside banking institution without first obtaining a variance, construction permits, and site plan approvals as such use would be beyond the scope of the original site plan and is not a permitted principal or accessory use in the office research zone under section 13–406 of the township ordinance. Thereafter, on January 30, 1985 the division manager of public relations for AT & T Communications wrote to the mayor of Bedminster Township outlining the history of the banking center and the proposed operation of that center by Summit Trust Company. He requested the township committee to take appropriate steps to permit Summit Trust Company to operate the banking center if it did not agree with AT & T's position that said use was a permissible one. On February 7, 1985, the township attorney wrote to plaintiff and stated that he concurred in the zoning officer's opinion that "without a variance from the Board of Adjustment, you will not be able to operate this branch of the Summit Trust Company." As a result of the position taken by the zoning officer and the township attorney, AT & T filed an application appealing from the decision of the zoning officer under *N.J.S.A.* 40:55D–70(a). AT & T argued that a variance was not required. Alternatively, AT & T requested a use variance under *N.J.S.A.* 40:55D–70(d) to permit it to contract the operation of the banking facility to the Summit Trust Company.

A public hearing before the zoning board of adjustment was held on AT & T's application on April 24, 1985. AT & T presented testimony from four witnesses including that of a licensed planner. A copy of the site plan of the AT & T facility, the building plan of the complex, and the floor plan illustrating the banking center were also marked into evidence. After the hearing, the board denied the appeal from the decision of the

zoning officer and also denied the variance requested. The board of adjustment made the following relevant findings of fact:

3. The present application to the Board of Adjustment is to permit the applicant to contract its in-house banking facility to Summit Trust Company which facility has heretofore been operated by the applicant itself.

5. ... the services provided by such facility at the present time are as follows:

(a) Cashing personal checks and payroll checks;

(b) Issuing travelers checks and work advances;

(c) Cashing expense vouchers.

10. If Summit Trust Company operated the facility in question, it would expand the scope of services being offered, and would probably be offering such additional services as checking accounts, savings accounts, I.R.A.s and probably loans.

22. It was conceded by the witnesses for the applicant that should the applicant not obtain permission to contract the in-house banking facilities to Summit Trust Company, that, in that event, the present services would continue, and that there would be no termination of same.

The board of adjustment then concluded that the zoning officer was correct in his interpretation that the proposed corporate banking center was not a permitted accessory use under section 13–406 of the land development ordinance. It also concluded that although AT & T may have satisfied the "negative criteria" for a subsection (d) use variance, it had failed to demonstrate "special reasons" for granting same. *See, e.g., Kessler v. Bowker,* 174 *N.J.Super.* 478 (App.Div.1979), certif. den. 85 *N.J.* 99 (1980).

AT & T then instituted this action in lieu of prerogative writs seeking to reverse the decision of the board of adjustment as arbitrary, capricious and unreasonable.

AT & T argues that its decision to sub-contract its banking operation to Summit Trust Company did not implicate the zoning power. Defendant disagrees and asserts that the "real issue involved in this case is whether the proposed use was a principal or accessory permitted use in the Office Research Zone according to the Bedminster Township Zoning Ordinance." Alternatively, AT & T asserts that a use variance should have been granted. Defendant counters by arguing that plaintiff

demonstrated no "special reasons" for the issuance of a use variance and that none of the board's actions can be deemed to be unreasonable, arbitrary or capricious and therefore should be sustained by the court.

Whether the zoning power is implicated by implementation of the agreement between AT & T and the Summit Trust Company is a question of law. As such, the board's determination on this issue is not entitled to its usual presumption of validity. *See Supermarkets Oil v. Zollinger,* 126 *N.J.Super.* 505 (App.Div.1974); *Trenkamp v. Township of Burlington,* 170 *N.J.Super.* 251 (Law Div.1979).

It is conceded by the board that AT & T may continue its present operation of the banking center and that such operation is a permitted accessory use. However, the board takes the position that a change in personnel operating the banking facility coupled with the addition of other banking services renders the proposed use unlawful. The board's position is clearly incorrect in view of the fact that the proposed banking center operated by Summit Trust Company in no way affects the "use" of the property nor does it have any impact upon valid zoning considerations or police power considerations of the municipality. In effect, the township is largely seeking to determine who operates the banking center. This is not a valid zoning consideration. *Cf. Bridge Park Co. v. Borough of Highland Park,* 113 *N.J.Super.* 219 (App.Div.1971); *Metzdorf v. Borough of Rumson,* 67 *N.J.Super.* 121 (App.Div.1961). The contract entered into by AT & T and Summit Trust Company does not implicate the zoning power.

Furthermore, the transcript of the hearing before the zoning board indicates that the board was unaware that there are two sections of the Bedminster ordinances dealing with accessory uses. Section 13–406.2, which the board relied on, covers specific accessory uses permitted in an office research zone. Under section 13–105 of said ordinance, all uses not expressly permitted are prohibited. Relying on these provisions, the board affirmed the zoning officer's decision. However, there is

also a general "catch-all" definition of accessory building structure or use found in section 13–201 which the board did not consider. It provides that an accessory use is "[a] building, structure or use which is customarily associated with and is subordinate and incidential to the principal building, structure or use and which is located on the same lot therewith, including, but not limited to, garages, carports, . . . ."

This language has recently been interpreted in *Charlie Brown of Chatham v. Board of Adjustment*, 202 *N.J.Super.* 312 (App.Div.1985) in that court's analysis of a similar ordinance. That case presented the question of whether sleeping accommodations for restaurant employees on the premises was a permitted accessory use under the ordinance. There the court held that the word "customarily" as employed in the definition of "accessory use" in a land use ordinance means that the use must be scrutinized to determine whether it has commonly, habitually, and by long practice been established as reasonably associated with the primary use. *Id.* at 324. The word "incidential" as employed in the definition of "accessory use" in a land use ordinance was defined as one which is subordinate and minor in significance, and must also incorporate the concept of reasonable relationship with the primary use; it is not enough that the use be subordinate, but the use must also be attendant or concomitant. *Ibid.*

At the hearing AT & T introduced evidence that banking centers such as that proposed in the agreement between AT & T and Summit Trust Company are common in large corporate office and research complexes. AT & T has such banking centers operated by commercial banks in eight of its facilities throughout New Jersey. In addition, testimony was introduced that banking centers operated by commercial banks are present in large corporate office and research complexes in Warren Township, Summit and Kenilworth. In AT & T's letter to the township mayor, which became part of the record before the board pursuant to *N.J.S.A.* 40:55D–72, plaintiff asserted that it is also aware of similar banking centers operated by commer-

cial banks at large corporate office and research complexes in Piscataway, Nutley, Linden, Florham Park, Morris Township, Wayne, Livingston, and Navesink. Accordingly, pursuant to the standards set forth by the Appellate Division in *Charlie Brown*, it is clear as a matter of law that the proposed operation of the banking center by Summit Trust Company is a permitted accessory use under the relevant sections of the Bedminster Township zoning ordinance.

Therefore, no use variance was required in order to effect the agreement between AT & T and Summit Trust Company. No remand to the board is ordered as to hold otherwise based on this record would be arbitrary, capricious and unreasonable amounting to an empty formality. *See Verona, Inc. v. Mayor and Council of West Caldwell,* 49 *N.J.* 274 (1967); *Baptist Home of South Jersey v. Borough of Riverton,* 201 *N.J.Super.* 226 (Law Div.1984). Plaintiff's argument that it did in fact demonstrate special reasons for the granting of a use variance under *N.J.S.A.* 40:55D–70(d) is not reached.

Accordingly, the decision of the Bedminster Township Board of Adjustment is reversed.