719 A.2d 1285

ML PLAINSBORO LIMITED PARTNERSHIP, PLAINTIFF–APPELLANT, v. TOWNSHIP OF PLAINSBORO AND THE PLAINSBORO TOWNSHIP ZONING BOARD OF ADJUSTMENT, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 21, 1998—Decided December 1, 1998.

Before Judges KING, WALLACE and FALL.

*David J. Connolly, Jr.*, argued the cause for appellant (*Pitney, Hardin, Kipp & Szuch,* attorneys; *Mr. Connolly* and *Christopher John Stracco*, on the brief).

*Janice B. Stonaker* and *Michael Balint,* argued the cause for respondents (*Stonaker & Stonaker,* attorneys for respondent

Township of Plainsboro, *Michael P. Balint*, attorney for respondent Zoning Board of Adjustment; *Ms. Stonaker*, on the joint brief).

The opinion of the court was delivered by

KING, P.J.A.D.

In this declaratory judgment action filed on January 26, 1996 plaintiff, ML Plainsboro Limited Partnership, a subsidiary of Merrill Lynch & Co., Inc., sought an adjudication of its rights to use or sell its properties in the Township of Plainsboro (Block 5.01), a Hotel Conference Training Center (HCTC) on Lot 3.03 and an Administrative Office Building (AOB) on Lot 3.07. The plaintiff also owns unimproved land on the site designated as Lot 3.08 in Block 5.01. These properties comprise a 275–acre site in the Princeton Forrestal Center on Route 1.

Plaintiff sought a declaration of rights as follows:

(1) to use the HCTC as a commercial hotel and conference training center open to the public for transient guests and third-party trainees and conferees (not Merrill Lynch personnel) attending programs at the HCTC,

(2) to lease all or part of the AOB to commercial tenants not affiliated with Merrill Lynch,

(3) to sell the HCTC and its associated lot to any person or entity, independent of the AOB and its associated lot, and

(4) to sell the AOB and its associated lot to any person or entity.

Plaintiff sought this declaratory adjudication with the term that it need not receive "further approval of the [Plainsboro] Planning Board." The Township opposed the relief sought, insisting that the use of these facilities was approved during the period from 1981–1983 for a single-user, owner-occupied corporate campus, *i.e.*, Merrill Lynch only, and that the declaration sought by plaintiff

would "change the character of the site" requiring further "site plan approval" of a non-specific nature by the Planning Board.

On May 13, 1996 the Law Division judge remanded the matter to the Zoning Board for consideration of plaintiff's right to declaratory relief under *N.J.S.A.* 40:55D–70(a) and (b) (adjudicatory powers of zoning board). The Zoning Board declined relief to plaintiff, finding, in effect, that Planning Board approval was required for any of the proposed changes in ownership or occupancy of the properties.[1] When the matter came back to the Law

---

[1] The Zoning Board resolution stated that the ultimate question which the Zoning Board decided was:

Whether or not the applicant has the authority, pursuant to prior Planning Board approvals, to sell, lease, or convey, all or any part of its corporate hotel and conference training center and/or its administrative office building without obtaining any further approval from the Planning Board of the Township. . . .

The reasons for the denial of ML's application were set forth in the Zoning Board resolution as follows:

1. The hypothetical question posed by Merrill Lynch constitutes a change in character of the site and thus pursuant to the Township Ordinance constitutes development requiring Planning Board Review.

\* \* \*

2. Merrill Lynch continually represented itself to the Planning Board as a single user of the subject facility and by incorporation of various supporting documents; Merrill Lynch's representations contained in those documents; and the agreement to be bound by those documents as incorporated in the various resolutions confirmed the single user element of the site as a key component in the approvals.

3. Merrill Lynch has previously applied for a number of modifications to its plan and the conversion of the single user aspect of the site to a multiple user of the site is inconsistent with the intent of the prior reviews and approvals by the Planning Board regarding representations concerning usage of the facility.

4. While mention of third-party users was made at the time of some of the Planning Board approvals, the representations were that the site would be solely for Merrill's own use: the Planning Board did not consider the site plan implications of any other uses for the property.

5. Due to the integrated nature of the site, the user is a substantial factor in determining the actual use of the site: to separate the uses, as hypothesized herein, requires municipal review of the development itself.

6. The change from apartment-style housing to hotel-style housing and the subsequent subdivision of the property were done for reasons of financing

Division on January 23, 1997, the judge declined to disturb the decision of the Zoning Board and refused any declaratory relief. The judge dismissed plaintiff's now-amended complaint for a declaratory judgment against the Township and the Zoning Board.

We are satisfied that the plaintiff is entitled to the declaratory relief sought with respect to its rights to use the properties or to sell them. The Declaratory Judgment Act, *N.J.S.A.* 2A:16–50 to –62, is expressly remedial. *N.J.S.A.* 2A:16–51. The Act's mandate is to afford relief from uncertainty with respect to a party's rights, including property rights. *N.J.S.A.* 2A:16–50. A court should liberally construe and administer the Act to accomplish this general purpose. *New Jersey Home Builders Association v. Div. on Civil Rights,* 81 *N.J.Super.* 243, 251, 195 *A.*2d 318 (Ch.Div.1963), *aff'd,* 45 *N.J.* 301, 309, 212 *A.*2d 345 (1965); *see Bell v. Stafford Tp.,* 110 *N.J.* 384, 390, 541 *A.*2d 692 (1988); *So. Burlington Ct. N.A.A.C.P. v. Tp. of Mt. Laurel,* 67 *N.J.* 151, 159, 336 *A.*2d 713 (1975). We conclude that plaintiff has presented a justiciable issue and has appropriate standing. The pendency of the parallel, but collateral, tax litigation does not detract from these conclusions. We do not consider this action a request for an abstract declaration of contingencies which may emerge in a future law suit. *See Donadio v. Cunningham,* 58 *N.J.* 309, 325, 277 *A.*2d 375 (1971). This is a request for a declaration of present rights to use or sell the properties. Indeed, our declaratory adjudication here may help to clarify the parties' rights in the pending tax litigation which involves the evaluation of the properties.

To the extent necessary, we exercise our original jurisdiction, although we find that this case, with a complete record, presents a

---

and the supporting documents incorporated by reference in the resolutions of approval reflect the representations that Merrill Lynch made and agreed to be bound by, specifically that the facilities were still intended to be used by Merrill Lynch, its employees and guests.

Plaintiff denied it made any such binding representations and none are found in the record.

question of law without disputed facts which we can properly conclude without any remand. *R.* 2:10–5; *Bressman v. Gash,* 131 *N.J.* 517, 529, 621 *A.*2d 476 (1993); *Pieretti v. Bloomfield,* 35 *N.J.* 382, 385, 173 *A.*2d 296 (1961).

■ We stress that plaintiff can use or sell the properties for the described conference-center-hotel and office purposes. The hotel, conference center and office building uses are legal and permitted in the Planned Multi–Use Development (PMUD) zone, § 101–137.[2] Indeed, these uses are quite characteristic of the surrounding area, east of Princeton and the University. The approval resolutions from 1981 through 1983 did not attempt to restrict the use to plaintiff ML specifically or require Planning Board approval for change of ownership. We hesitate to attach our absolute imprimatur to the term or condition desired by plaintiff: that it need never return to the Planning Board for future approvals. We rule that plaintiff does not need Planning Board approval to sell one or both properties and to separate buyers, or to have transients in the HCTC, or occupants or tenants in the AOB who are not Merrill Lynch employees or corporate family. The Planning Board cannot dictate to perpetuity who can use, buy, own or rent the properties – – – – as a single or multiple owner. But any changes in the nature of the use or the physical structures could legitimately implicate site plan

---

[2] Section 101–137 provides:

The following uses shall be permitted in a PMUD planned unit development:
A. *Office,* research and industrial uses permitted in the I–100 Limited Industrial Zone under Article VIII of this chapter and any amendments thereto and the I–200 Industrial Zone under Article VIIIA of this chapter and any amendments thereto.

\* \* \*

C. Business and commercial uses permitted in the GB Business Zone under Article VII of this chapter and any amendments thereto and the OB–1 *Office Business Zone* under Article VIIA of this chapter and any amendments thereto. An indoor motion-picture theater and *a hotel or motel and related facilities, included but not limited to a conference center* auxiliary to the hotel or motel use, shall be permitted as commercial uses. (Emphasis supplied).

or other code concerns under local law, which could require Planning Board or other municipal approvals.

For example, plaintiff asserts and we accept its representation, that it has adequate parking in place for the extant, legal uses. If future events disclose this representation is inaccurate further parking facilities must be installed with appropriate approvals, or relief must be sought from the Township, if necessary. Naturally, our decision does not prevent local enforcement of site plan ordinances, building codes and other ordinances which might properly impact on future development of or changes to the property.

Our desire is solely to clarify plaintiff's rights to use or sell the properties under the present zoning and approvals, none of which gives the Planning Board, or any other arm of the local government, a say in who can own or use the properties for legally-permitted purposes, no matter what the Township's political leaders hoped they were accomplishing some fifteen years ago in 1981–1983 in terms of future land-use controls. *See Bridge Park Co. v. Borough of Highland Park,* 113 *N.J.Super.* 219, 221, 273 *A.*2d 397 (App.Div.1971) (zoning ordinances limit land uses, not land users; zoning ordinance which restricted ownership to a single entity was void as regulation if the ownership of buildings or types of permitted tenancies); *Arkam Machine & Tool Co. v. Township of Lyndhurst,* 73 *N.J.Super.* 528, 533, 180 *A.*2d 348 (App.Div.1962) (number of tenants does not affect use; test is "use" and not ownership or tenancy); *AT & T Communications v. Bd. of Adj., Tp. of Bedminster,* 216 *N.J.Super.* 340, 345, 523 *A.*2d 709 (Law Div.1986) (use of a property by another owner does not affect the use to which the property is put and does not impact on valid zoning considerations); *Township of Washington v. Central Bergen Community Mental Health Center, Inc.* 156 *N.J.Super.* 388, 417, 383 *A.*2d 1194 (Law Div.1978) (statute on power to zone "utilizes the word 'use' solely as a reference to the actual or physical purposes to which land or buildings are devoted and does not apply to the legal form by which ownership or possession is

derived"). As the court remarked in *AT & T Communications v. Bedminster Adj. Bd.,* 216 *N.J.Super.* at 345, 523 *A.*2d 709, "In effect, the township is largely seeking to determine who operates the banking center. This is not a valid zoning consideration."

This opinion shall constitute the order of this court. The judgment of the Law Division is so modified.